. if the state of the general account of the contractors with the department will justify it, of which, as before said, we have not the means of judging, even if we had authority so to do, in this form of proceeding, and in this stage of it.

Upon the whole, I am clearly of opinion, that the postmaster-general has substantially complied with the command of the peremptory mandamus, and that he cannot be considered in contempt for not crediting interest upon the balance of the award, or upon any part of it. And of that opinion was the whole court.

[For subsequent proceedings, see Cases Nos 13,479 and 13,480.]

## Case No. 15,519.

### UNITED STATES v. KENDRICK.

[2 Mason, 69.] [1]

Circuit Court, D. Massachusetts. May Term, 1820.

PERJURY — CERTIFICATE UNDER FISHERY BOUNTY LAWS.

An indictment for perjury cannot be sustained on the seventh and ninth sections of the act of July 29, 1813, c. 34 [2 Story's Laws, 1350; 3 Stat. 49, c. 35], granting a bounty to vessels engaged in the fisheries, unless the certificate required by the seventh section be sworn to by the same person, (whether owner of the vessel or his agent or representative,) who signs the certificate. If the owner signs the certificate and the agent swears to it, the case is not within the statute.

Indictment against the defendant [Edward Kendrick] for perjury, founded on the ninth section of the act of July 29, 1813, c. 34 [2 Story's Laws, 1350; 3 Stat. 49, c. 35], granting a bounty to vessels engaged in the fisheries. The fifth and sixth sections of the act provide for the allowance and payment of the bounty. The seventh section enacts that the owner or owners of every fishing vessel, &c. his or their agent or lawful representative shall, previous to receiving the allowance made by the act, produce to the collector who is authorized to pay the same, the original agreement made with the fishermen employed on board of the vessel, "and also a certificate to be by him or them subscribed, therein mentioning the particular days on which such vessel sailed and returned on the several voyages or fares she may have made in the preceding fishing season, to the truth of which he or they shall swear or affirm before the collector aforesaid." The ninth section declares that any person who shall make any false declaration on oath or affirmation. required by this act, being duly convicted, shall be deemed guilty of perjury, &c. The indictment alleged (and so the fact appeared at the trial,) that the certificate was signed by Theophilus Crowell, the owner of the vessel, and that the oath was taken by the defendant as agent of the owner.

Mr. Prescott, for defendant, objected that under these circumstances the indictment was not within the contemplation of the statute.

Mr. Blake, U. S. Dist. Atty., argued e contra.

STORY, Circuit Justice. It is the decided opinion of the court that this indictment cannot be sustained upon the statute. The seventh section manifestly supposes and requires that the oath should be taken by the same person who signs the certificate, whether it be signed by the owner or his agent or representative. It surely cannot be supposed that one person is to be sworn to the truth of another person's certificate. Here the certificate is signed by the owner, and the oath is taken by the defendant, who is stated to be agent of the owner. The grossest frauds might be committed if this practice were allowed to prevail, for a stranger might swear to the facts from an innocent belief of their existence from the certificate of the owner, and the owner might fraudulently sign the certificate and escape the penalty of the act. The objection is fatal.

UNITED STATES (KENRICK v.). See Case No. 7,713.

## Case No. 15,520.

### UNITED STATES ex rel. WARDER v. KENEDY.

[4 Cranch, C. C. 592.] [1]

Circuit Court, District of Columbia. Nov. Term, 1835.

ACTION ON ADMINISTRATION BONDS — RETURN OF NON EST OR NULLA BONA.

No creditor can maintain an action against the administrator of his debtor, upon his administration bond, before a non est returned upon a capias ad respondendum against the administrator, or a fi. fa. returned nulla bona, or other apparent insolvency. The Maryland act of 1720. c. 24, § 2, is in force in the county of Washington.

Debt, on administration bond. Breach assigned in not paying a debt due by the intestate to Walter Warder, ascertained by arbitrators mutually chosen by the said Walter Warden and the defendant [F. X. Kenedy], as administrator [of W. L. Kenedy]; and in not making an inventory of the estate of his intestate; and in not rendering any account thereof, as required by law.

By the Maryland law of 1720, c. 24, § 2. it is enacted, "that it shall not be lawful for any creditor to prosecute any administration or testamentary bond, for any debt or damage due from or recovered against any deceased person's effects, before a non est inventus on a capias ad respondendum be returned against the executor or administra-

---

[1] [Reported by William P. Mason, Esq.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

tor; or a fieri facias returned nulla bona by the sheriff; or such other apparent insolvency or insufficiency of the person or effects of such executor," &c., "as shall, in the judgment of the provincial court, render such creditor remediless by any other means than suing the bond, on penalty of being condemned in full costs; and the defendants may give this act," &c., "in evidence without special pleading."

Upon a general demurrer to the declaration it was objected, by Mr. Redin, for defendant, that there was no averment in the declaration that a non est inventus had been returned against the defendant, who was a resident of this county; nor a fieri facias returned nulla bona; or any other apparent insolvency or insufficiency of the defendant, as required by the Maryland statute of October, 1720, c. 24, § 2.

W. L. Brent, contra: That the act of 1720, c. 24, was repealed by the act of 1798, c. 101, § 2, the former being inconsistent with the provisions of the latter act, contained in subchapter 5, § 5; Id. subc. 6, § 13; Id. subc. 8, §§ 9, 14; Id. subc. 10, §§ 4, 9; and Id. subc. 12, § 5.

Mr. Redin, in reply, contended that there was no inconsistency in the provisions of the two acts.

THE COURT, being of that opinion, and that the act of 1720 still remained in force, rendered judgment upon the demurrer for the defendant (nem. con.).

## Case No. 15,521.

### UNITED STATES v. KENNAN.

[1 Pet. C. C. 168.]1

Circuit Court, D. Pennsylvania.    Oct. Term, 1815.

REPLEVIN — WHEN MAINTAINABLE — CONTRACT — JOINDER OF PARTIES.

1. Parker agreed in writing, to furnish certain goods to the commissary general of the United States, manufactured and about to be made, for the purpose of paying a debt due by him to the commissary general, and to Robert Earp. The action of replevin, cannot be maintained by the United States, for the goods manufactured by P. as by the contract, no interest appears to have vested in the United States, and if it had vested, R. E. is equally interested in the goods, and ought to have been joined in the suit.

[Cited in brief in Com v. City of Pittsburg, 34 Pa. St. 508.]

2. A. agrees to pay a sum of money, or do a certain act, for the use of B. and C. A suit for this contract cannot be supported in the name of either of the parties only, but in the name of B. and C. jointly.

Replevin for one hundred and sixteen pieces of kerseys. The title of the United States, was founded on an agreement, bearing date the 15th February, 1815, substantially as follows: "Thomas Parker agrees to furnish the commissary general of the United States, with a sufficient quantity of gray and white kerseys, part of which are now finished, and the materials for the remainder are now on hand; to pay the debt due the commissary, and the notes held by Robert Earp, altogether amounting to 7,000 dollars and upwards; and my stock in trade, on hand, is hereby appropriated and set apart for the payment of these engagements." These kerseys, being in the possession of Kennan, are claimed by Redman, under a subsequent assignment made by Parker. On the same day, a notice, signed by Robert Earp, was sent to Kennan, in the following words: "You are required not to deliver any part of the stock of Parker in your possession, except in compliance with the assignment made this day, for my use, by Parker; a copy of which is herewith delivered."

J. R. Ingersoll and Mr Hopkinson, for defendant contended that the United States had failed to prove property in these goods; and if they had proved it, still they could not maintain this suit, without joining Robert Earp, he being a tenant in common in the same, under the agreement.

Mr. Chauncey, for the United States.

WASHINGTON, Circuit Justice. This cause turns upon a question of property. The foundation upon which the claim of the United States is rested, is the agreement of the 25th of February, 1815, between Thomas Parker and the commissary general, whose name even is not mentioned in it. There is nothing relied upon, but conjecture, to connect the United States, in any manner, with this transaction. It is not stated in the agreement, that the commissary general contracted as an agent of the United States, or on his own private account; which he might well do, and his title be used as a mere description of the person. It is not stated, that the consideration passed from the United States, or was intended for their use. The only interest which distinctly appears in the agreement, different from that of the commissary general is that of Robert Earp; who it would seem, together with the commissary general, was a creditor of Parker. The assignment, however, is made to the commissary general, in whose name the suit might have been brought. But if it appeared that this contract was made for the benefit of the United States; it appears also, that it was made for that of Robert Earp; and consequently, the suit could, upon no principle, be maintained, for the whole of the property in the name of the United States. If an agreement be made with A., to pay money, or to do any act for the use of B. and C., the suit may be maintained in the name of A., but certainly not in the name of C. or B., singly. So far as there is any evidence given in this cause, of property in the goods in question, it proves it to be exclusively in Earp. The name of the com-

1 [Reported by Richard Peters, Jr., Esq.]